[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court pursuant to summons and complaint, which complaint was dated March 9, 2001 and returnable April 3, 2001, in which complaint the plaintiff petitioner Martha Hundley sought a dissolution of the marriage, alimony, custody of the minor child, support for the minor child, a property settlement under the provisions of Connecticut General Statutes (C.G.S.) § 46b-81 and other relief as the court deems fair and equitable.
Attached to the complaint were the usual automatic orders and, in addition thereto, accompanying the complaint was a motion for alimony, custody and support, debt allocation, a motion to enjoin pendente lite, a motion for exclusive possession pendente lite and a motion to appoint an CT Page 5976 attorney for minor child, all of which accompanied the complaint, and the return by the state marshall as concerns service of process was attached to the paperwork. The defendant filed an appearance by counsel on April 4, 2001 and at the same time filed an answer to the complaint and a cross complaint and in the cross complaint the defendant sought a dissolution of the marriage, custody/joint custody, custody/joint custody pendente lite, child support, child support pendente lite, an allocation of debts, fair and equitable distribution of assets and all other relief as the court deems appropriate.
At the same time of filing the answer and the cross complaint, the defendant filed a motion for custody, joint custody, child support and an allocation of debt. On April 23, 2001, the court, Kenefick, J., accepted an agreement of the parties dated April 19, 2001, without prejudice, regarding financial matters.
The file contains a pendente lite agreement filed on April 23, 2001 bearing the signatures of the plaintiff and the defendant and their respective counsel.
Requests for extension of time were filed on both sides in order that counsel might secure all the requisite and required information.
On October 11, 2001, the court, Devine, J., dismissed the petition for failure to file a Case Management Agreement.
On October 18, 2001, plaintiffs counsel filed a motion to set aside the dismissal and restore the matter to the docket, which was granted by the court, Devine, J.
On October 29, 2001, the Case Management Agreement was filed and on December 26, 2001 the plaintiff filed a motion to modify custody and visitation pendente lite.
On December 26, 2001, the plaintiff filed a motion to appoint an attorney for the minor child. Examination of the file indicates that that motion was not acted upon.
On April 24, 2002 and April 25, 2002, the plaintiff and the defendant with their respective attorneys and witnesses appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact:
The plaintiff, whose maiden name was Hundley, and the defendant were joined in marriage on February 20, 1983 at New York, New York. CT Page 5977
The plaintiff retained her maiden name.
The plaintiff and the defendant have been residents of Connecticut since 1985.
The marriage of the parties has irretrievably broken down and there is no reasonable prospect of reconciliation.
The plaintiff and the defendant have one child issue of their marital union; to wit, Sebastian Coppotelli, born November 7, 1983.
No other children have been born to the plaintiff wife since the date of the marriage of the parties.
Neither the State of Connecticut nor any municipality or subdivision thereof have contributed to the support or maintenance of either of the parties during the pendency of the marital union.
According to the testimony, no attorney had been appointed for the child Sebastian Coppotelli, mindful of his age and circumstances.
The plaintiff is age 56. She described her health as being good. The plaintiff takes medication for allergies.
Prior to the marital union, the plaintiff held several positions of employment working at one time as a fundraiser for a school in New York City and she did administrative work incident thereto for a period of one year. The plaintiff then was associated with the American Ballet Theater and acted as a fundraiser for that organization.
The plaintiff testified that her last earnings in the year 1983 amounted to about $24,000.00.
The plaintiff met the defendant in 1981.
After the birth of the son Sebastian, the plaintiff took six weeks of leave and then returned to the work that she was then engaged with.
The plaintiff felt it was particularly important for her to be with the child Sebastian and stopped working in 1984 and moved to Connecticut after the defendant finished his residency as a physician.
The plaintiff remained at home with the son Sebastian for a period of about 15 years. CT Page 5978
Subsequently, the plaintiff secured a position as a fundraiser at the Norwich Free Academy (NFA) and wrote case statements for drafts or grants.
The plaintiff has a master's degree in English literature.
The plaintiff left her position with the NFA at the end of May in the year 2001.
The plaintiff indicated that the reason for her termination of the NFA position was due to the son Sebastian getting into difficulties or trouble and the related stress. The plaintiff felt that she needed to be more available to her son.
After leaving the NFA position, the plaintiff did not immediately look for other work. The plaintiff testified that she has applied for other positions; that the post that she previously held at NFA has now been filled by someone else.
The plaintiff testified that she had earned as much as $750.00 a week gross in the past incident to different positions.
The plaintiff testified that she has recently made as many as 11 applications in a search for a new position.
The plaintiff described her skills as being in the area of fund-raising, grants and college teaching.
When the parties were first married, the plaintiffs testimony was to the effect that their earnings were about equal.
The plaintiff testified that in 2001 on the basis of what she knew as to the defendant's circumstances that he earned in the neighborhood of $200,000.00.
The document submitted to the court, Plaintiffs Exhibit 1, indicates that the salaries and wages of the parties in the year 2000 amounted to $197,565.00 and in 2001, $197,997.00.
In the year 2000, as concerns those totals, the defendant's earnings, according to the plaintiff, amounted to $181,130.00.
The plaintiffs earnings for that year from NFA amounted to $16,867.00 plus an additional $5,000.00 that the plaintiff earned incident to her work and activities in making pottery. CT Page 5979
The plaintiff testified that the defendant received further rental income which she testified was to the amount of $24,000.00 ±.
The defendant on relocating to Connecticut started a practice in Montville. It was known as the Montville Health Center. This was in company with another practitioner and that activity extended for a year.
The defendant then, according to the plaintiffs testimony, bought the present location where the defendant practices in Jewett City at 2 Lee Road.
Until the time of trial, the plaintiff represented that she was not aware of the defendant's interest in other real estate which will be touched on in due course.
The plaintiff testified that life was much more stressful at a point in time when the son Sebastian received his motor vehicle license; tension in the home increased.
The plaintiff and the defendant participated in family counseling for seven years, but tension still remained.
The plaintiffs testimony was to the effect that the parties rarely saw each other, presumably because each was involved in matters of employment, particularly the demands on the defendant, mindful of his professional calling.
The plaintiffs testimony was to the effect that the parties could not engage in civil discussions, one to the other, and that after 1998, matters deteriorated markedly.
The plaintiff indicated that one of the major problems in the marital union was the difference in approach as concerns parenting and the solution of problems of stress and the conflicts incident thereto.
The plaintiff indicated that several days before Christmas that there was a physical altercation between the parties.
The plaintiff feels that the marriage has irretrievably broken down.
The plaintiff testified as to the funds that she had received from her father in the past; originally in the amount of $70,000.00. Subsequently, the plaintiff lost, according to her testimony, 20% of those funds in ill-advised investments.
The plaintiffs testimony was to the effect that her father wanted to CT Page 5980 ensure some financial stability for the plaintiff for her retirement and to assist with regard to the education and allied matters for the son Sebastian.
The plaintiff, as reflected on her financial affidavit, was engaged in some financial activities in an entity known as Long Leaf, another called First Hand, another called Dresner and another identified as a Merrill Lynch money market account.
The premises presently occupied by the plaintiff were purchased in 1988 and the parties moved in, in 1989.
The plaintiffs estimate of the value of the property as a lay person is to the amount of $260,000.00.
Her testimony was to the effect that the defendant put $40,000.00 into the purchase of the premises at 11 Connshire Drive.
The mortgage, taxes and insurance are presently and have, for some time in the past, been paid by the defendant.
In November of 1999 the defendant was involved in an automobile accident, but no further factual data incident thereto was presented.
As earlier noted, the plaintiffs age is 56. Basically, her health is good. Her salary at NFA was approximately $40,000.00 at the time that she left.
The plaintiffs performance of her duties at NFA apparently were good and in the near term past the plaintiff has applied for different positions including the Lyme Academy of Fine Arts, the Lyme Academy Theater or as a teacher, an application to Mitchell College for teaching, to Guilford Handcraft and to Eastern Connecticut State University.
As earlier noted, the plaintiff has a master's degree. The plaintiff has taught as a substitute teacher in the past.
The plaintiff felt at the present time, mindful of her age, that the stress of coping with teenage youngsters in the teaching arena would be particularly stressful.
The plaintiff has been unemployed since May of 2001.
The testimony was to the effect that the plaintiff in addition to the figures disclosed on the financial affidavit, has an $8,000.00 balance in CT Page 5981 Citizen's Bank.
The plaintiff is a member of Wesleyan Potters. She has a studio above the garage at her home residence. At Christmas time in the year 2000, the plaintiff set up a new account incident to the pottery activity.
In February of 2001, the son Sebastian moved in with the defendant, at least temporarily. Subsequently, the child returned to the plaintiff.
The son Sebastian resides with both parties periodically; four nights with the defendant, three nights with the plaintiff.
The son Sebastian sees guidance counselors, teachers and so forth in order to solve certain behavioral problems.
The child was apparently involved with a matter concerning the authorities, but the end result was apparently good.
There was an indication that the son had on occasion been skipping school.
The plaintiff voiced her request with regard to alimony; testified that she intends to remain in the area; and is actively seeking employment as noted above.
The plaintiff indicated that initially she was not inclined to live in New York City even though the defendant might have preferred that incident to employment opportunities in his profession.
Pier testimony was to the effect that the defendant is involved in the family practice of medicine.
The plaintiff did not participate in any phases of the defendant's work during the course of the marriage.
The plaintiff, in addition to what has been noted above, apparently takes Claritin and Flonase for her allergy condition.
In achieving her educational status, the plaintiff attended the University of North Carolina, for a bachelor's degree and the University of Virginia for the master's degree.
This is the plaintiffs second marital union; the defendant's first.
The plaintiff indicated that there was only one instance of claimed physical violence and that there were no problems incident to the CT Page 5982 immoderate or improper use of drugs, alcohol or other substances.
The plaintiff indicated that the principal problems in the marital union were acrimonious words, heated comments and a lack of communication.
The property at 11 Connshire Drive has been and stands in the name of the plaintiff only and has been in that status for the last eight or nine years. General Motors Acceptance Corporation is the mortgage holder. The defendant apparently is a guarantor of payment.
The property at 2 Lee Road in Lisbon is in the name of the defendant. The plaintiff apparently has no record interest in that property.
The property at 2 Lathrop Avenue in Norwich is in the name of the defendant and the plaintiff apparently has no record interest in that property.
The defendant graduated from medical school in 1981. He was then age 36. His earlier education in college was completed in 1967. Initially the defendant worked for a school for emotionally disturbed children. That employment extended over four years.
The defendant served his medical residency at King's County Hospital in 1984.
The defendant had various job opportunities in New York City, but the plaintiff and the defendant moved to Connecticut, presumably it being a less stressful environment.
The defendant grew up in New York City and as earlier noted started a practice at the Montville Care Center. The defendant's practice now is focused in Jewett City and has apparently worked out well. The defendant has an office at 2 Lee Road in Lisbon and an interest in property at 2 Lathrop Road due to the expansion of the medical practice. This location involves two other persons besides the defendant.
The defendant indicated that the practice which involved other medical providers is presently being dissolved.
The defendant indicated that there were considerable problems with regard to the son Sebastian in trying to discuss or resolve those problems and indicated that the plaintiff had taken a rather fixed or inflexible position with regard to trying to assist in solving the son's problems. CT Page 5983
The defendant testified that the plaintiff on one occasion scratched him and twisted his thumb.
The defendant's testimony was that he merely pushed her away in an effort to resolve the matter.
Some time ago the parties separated to try to see if the marriage might be preserved and the differences reconciled. The defendant testified that the plaintiff wrote to him saying that she did not wish to have the marriage continue.
The sum of $5,200.00 has been paid by the defendant for mediation, costs and expenses.
The defendant's testimony was to the effect that the child Sebastian got into difficulties with the authorities after the parties separated.
The defendant pays all expenses incident to the home and also for the car that was operated by the son Sebastian and all expenses incident thereto.
It was the defendant's position that there is no reason why the plaintiff cannot return to gainful employment and that her termination of the NFA position was ill-advised.
Over the life of the marriage the defendant's testimony was to the effect that he has paid off over $300,000.00 in incurred educational loans including interest.
The defendant is age 57.
He is not able to utilize any IRA funds until he is age 65.
The defendant lives in a rental and described as an "old, beach cottage," presently.
The plaintiff, mindful of the length of the marriage, would be eligible to collect Social Security on reaching a certain age; the marriage being for more than ten years of duration.
The defendant testified that the debt to Backus Hospital shown on his financial affidavit is still owed in full and is open, as is the case with Jewett City Trust, the line of credit.
The Fidelity SEP IRA asset of the defendant was started in the early 1990's. The VanGuard asset started in 1989. CT Page 5984
The defendant felt that the background and upbringing of the plaintiff in contrast to his upbringing was such that the plaintiff on occasion became enraged as concerns restrictions which the defendant sought to impose upon the son Sebastian; the defendant taking a more open-minded approach.
The parties, as earlier noted, did resort to the services of a mediator; the mediator being an attorney and the amount paid for said services is noted above.
The plaintiff participated in four sessions with the mediator and the defendant, six sessions.
The defendant testified that on occasion the plaintiff has thrown drinks in his face.
Incident to mediation, there were sessions in both Norwich and Hartford.
The defendant indicated that the pottery activity and work performed by the plaintiff results in a beautiful product.
The defendant testified that he enjoys the work of his profession in the healing arts.
The defendant noted that at one point years ago the plaintiff was employed by McGraw-Hill in New York.
The defendant's age is 57. His education included securing a bachelor's degree from Queens College of New York in English literature; a medical degree from the Chicago Medical School in 1981. The defendant described his health as good. As earlier noted, this was the defendant's first marriage.
In addition to other activities incident to his profession, the defendant is an adjunct faculty member at the University of Connecticut Medical School.
The defendant indicated that the son Sebastian early on in school did well. Some problems developed in the middle school years and at one time the child was afflicted with Attention Deficit Disorder.
The defendant testified that the plaintiff always seemed to be unhappy and was particularly upset when the child would not do well in school.
The defendant's posture was to the effect that he tried diligently to CT Page 5985 preserve the marriage, but felt that the plaintiff was not committed to the same extent.
The plaintiff lamented that she was verbally abused during the marriage and characterized the conduct of the defendant as emotional violence.
The testimony of the parties was to the effect that the counseling that they engaged in, in an effort to preserve the union, extended over a period of seven years.
The plaintiff acknowledged that there were no problems with regard to the immoderate use of alcohol or substances and verified that there was only the one instance of claimed physical violence.
From the exhibits, Plaintiff's Exhibit I, the court has already touched upon the combined salaries and income of the parties for the years 2000 and 2001. The exhibit includes a copy of the federal income tax return of the parties for the year 2001 and reflects wages, salaries, etc., at $197,997.00; rental income, $29,975.00; plus other modest adjustments so that the total adjusted gross income as reflected on that return for the parties is $230,881.00.
A copy of the State of Connecticut form CT-1040 for the year 2001 is also a part of this exhibit and the figures contained thereon comport with the federal return.
The only other exhibit presented to the court, Plaintiff's Exhibit 2, was a copy of a letter written by the plaintiff to the defendant, which among other things contains a sentence by the plaintiff that she was desirous of securing a divorce, describing the problems, emotional and otherwise, afflicting the parties and indicating that the marital match between them was ill-advised. No useful purpose is served by setting out the exhibit verbatim.
From the financial affidavits of the parties, as to the plaintiff, the court finds that she is presently unemployed; that her only income as shown on the financial affidavit is to the amount of $45.72 a week from her pottery studio. Her weekly expenses are listed at $1,444.96. Debt is indicated to be VISA credit card in the amount of $1,000.00.
The plaintiff values the 11 Connshire Drive, Waterford property at $260,000.00 with a mortgage of $120,000.00 for an equity of $140,000.00.
The plaintiff shows two motor vehicles, a 1997 Mercury Villager valued at $10,000.00 free and clear, a 1996 Dodge Neon valued at $4,000.00 free and clear; no valuation shown for any personal property or furnishings. CT Page 5986
Schedule A attached to the affidavit reflects five funds or accounts all in the name of the plaintiff or the plaintiff and the son Sebastian, which accounts total $88,976.00. Total cash value of all assets shown on her financial affidavit amount to $242,976.00.
From the financial affidavit of the defendant, his occupation is that of a physician; his gross weekly wage reflected on the affidavit is $3,500.00; deductions, $1,325.00 for a net of $2,175.00. Weekly expenses, $1,201.00. Debt, William Backus Hospital, $110,000.00; VISA/MBNA, $7,500.00.
The defendant values the 11 Connshire Drive, Waterford property in approximately the same fashion as the plaintiff No material differences.
The property at 2 Lee Road in Lisbon is valued at $200,000.00; mortgage of $100,000.00 for an equity of $100,000.00.
The 2 Lathrop Avenue, Norwich property valued at $210,000.00; mortgage of $165,000.00 for an equity of $45,000.00.
Motor vehicles, a 1998 Subarn valued at $10,000.00 free and clear, a 1995 Dodge Neon valued at $4,000.00 free and clear; miscellaneous, $5,000.00; checking account and Fleet Bank account, $8,931.00; no value as to life insurance. Deferred compensation, etc., VanGuard simple IRA, $27,000.00; Fidelity SEP IRA, $18,000.00 for a total of $45,000.00. Total of all cash assets, which include the equity of the 11 Connshire Drive, Waterford property, which as earlier noted stands in the record title name of the plaintiff, $368,655.00.
 The Law
The court has jurisdiction in this matter; both of the parties being physically present before the court and represented by counsel of record. The pleadings in the matter were closed at the time of trial.
The issue of child support is not before the court mindful of the child Sebastian's age and the agreed custodial plan in place.
C.G.S. §§ 46b-81, 46b-82 and 46b-84 set forth the criteria that a trial court must consider when resolving property and alimony disputes in a dissolution of marriage action. The court must consider all of these criteria. The trial court has endeavored to weigh the relevant statutory criteria. See Collucci v. Collucci, 33 Conn. App. 536 (1994) and Rummelv. Rummel, 33 Conn. App. 214 (1993). CT Page 5987
The court has considered all of the applicable case law that governs a matter of this nature. The court has considered the testimony of the parties, their candor or lack thereof, the two exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation, education and employability of each of the parties and the estate and needs of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant as elicited at the time of trial and predicated upon their respective financial affidavits, their prospects for future income and opportunity. The court has considered the issue of fault.
 Discussion
This is a marital union of 19 years.
The second marriage for the plaintiff and the first for the defendant; one child issue of that marriage, now age 19.
The plaintiff's health is basically good.
The plaintiff is well educated with a bachelor and a master's degree.
The court has touched on her employment history and her earning capacity, as well as the pendency of the plaintiffs applications for employment.
The one child issue of the relationship, now age 19, of course as is the case with any child, needs the continued love, affection and guidance of his parents; however, Sebastian is now a young man and the situation cannot be equated with one where a child of the union is of an early or tender age.
Only one incident involving any physical actions has occurred during this fairly lengthy marriage; both sides have verified that that was so. No problems as to alcohol, substance abuse and no indication of any indiscretions.
The problems appear to be heated comments, a lack of communication, acrimonious words in part perhaps predicated upon divergent ethnic backgrounds in growing up and there being no common ground between the parties in solving teenage problems as concerns the young man Sebastian. CT Page 5988
The defendant is age 57. His health is good. He is well and highly educated; a practicing physician in the healing arts.
Manifestly the parties seem to have made a sincere effort as concerns trying to preserve the union; the sum of $5,200.00 was spent on counseling.
The court has endeavored to consider the present and future prospects for both the plaintiff and the defendant in coming to a determination of its orders.
Both of the parties are well educated, well intentioned adults whose divergent backgrounds have perhaps created the emotional problems that presented themselves and have brought the matter to this point.
While the fault for the breakdown of the marital union cannot with any degree of certainty be laid at the door of either of the parties, it would appear that the defendant is a more easy going individual inclined perhaps to view Sebastian's problems in the context of the young man growing up and reflecting the problems incident thereto whereas the plaintiffs approach was somewhat more inflexible.
The court enters the following orders:
In arriving at the following orders, the court has carefully considered the respective financial affidavits; particularly the category of weekly expenses; there being certain items contained within that category which in the court's opinion could be eliminated without any hardship. The court is also mindful of the present status of the parties insofar as employment is concerned.
As to the issue of periodic alimony, the defendant shall pay to the plaintiff the sum of $550.00 per week for a period of five years with the term of such alimony being nonmodifiable. The alimony may terminate earlier upon the death of the plaintiff or the defendant or the remarriage of the plaintiff or cohabitation as provided for under our statutes.
The court enters no orders as to custody or support mindful of the child Sebastian's age and circumstances. No requests have been made of the court as concerns custody or visitation because of the child's age and circumstances. As earlier noted, the arrangement at the present time is to the effect that the child Sebastian spends a portion of each week with the plaintiff and the defendant. CT Page 5989
The defendant shall cooperate with the plaintiff in allowing the plaintiff to maintain medical and dental insurance under the provisions of the defendant's existing medical coverage for the maximum time allowed under Cobra (three years) and the plaintiff shall pay the costs associated therewith.
Hopefully, the plaintiff and the defendant, on the theory of their abiding love and affection for the young man Sebastian, will maintain medical and dental coverage for him as they see fit for the next several years.
The plaintiff shall be entitled to remain as the sole owner of record of certain property located at 11 Connshire Drive in Waterford. On the basis of the testimony adduced at trial, mindful that no exhibit was entered showing the title of the property pursuant to any deed of record or mortgage document, the defendant if necessary or required shall execute such release or quitclaim as may be necessary to effect the title to 11 Connshire Drive, Waterford remaining in the plaintiff's name. The plaintiff shall be responsible for the outstanding and existing mortgage and any taxes and insurance payments incident thereto and on the basis of the testimony, it being represented that the defendant had earlier signed certain papers with the bank presumably as a guarantor of payment. The plaintiff shall hold him harmless in that respect as to the mortgage on 11 Connshire Drive.
Insofar as debts are concerned, the plaintiff shall be responsible for the one debt reflected on her financial affidavit; to wit, a debt to Visa in the amount of $1,000.00. The defendant shall be solely responsible for the two debts reflected on his financial affidavit to the William Backus Hospital in the amount of $110,000.00 and the Visa MBNA in the amount of $7,500.00.
As to personal property, the parties shall divide household furnishings and related items in a manner mutually satisfactory and in the event that they are unable to reach full agreement then the determination of the division of personal property shall be assigned to an arbitrator for binding arbitration. The arbitrator being appointed by this court and the court retains jurisdiction over that issue for said purpose.
As to motor vehicles, each party shall be entitled to retain title to any motor vehicle presently registered in their name and be responsible for any debts, obligations or liens incident thereto as may exist.
The plaintiff may retain as her sole and separate property all of the items reflected on Schedule A attached to her financial affidavit to include Long Leaf Partners Fund, $23,756.00; First Hand Tech Value fund, CT Page 5990 $9,908.00; Dresdner RCM Biotech, $9,107.00; Merrill Lynch IRA, $10,129.00; Merrill Lynch money market, $36,076.00.
The defendant shall be entitled to retain whatever interest of record he possesses in property known as 2 Leed Road in Lisbon wherein, according to his financial affidavit, there is an equity of $100,000.00. The defendant may retain any equity he may have in premises known as 2 Lathrop Avenue in Norwich in which, according to his financial affidavit, he has an equity of $45,000.00. Presumably, the personalty reflected on the defendant's financial affidavit can be resolved incident to the above-noted order by the court.
The defendant may retain the Citizen's Bank checking account and the Fleet Bank checking account which total $8,913.00. The defendant may retain the shares of Neurogen or Citizen's Utilities to which total $2,000.00. The defendant may retain the Vanguard Simple IRA valued at $27,000.00 and the Fidelity SEP IRA valued at $18,000.00. The defendant may retain the USAA Growth Fund valued at $10,000.00.
Each counsel submitted proposed orders to the court and the defendant's counsel accepted the court's invitation to file a trial brief, the obligation was not mandatory.
In her testimony and in the Plaintiff's Proposed Orders, the plaintiff requested periodic alimony of $1,000.00 weekly for four years and then $800.00 weekly until April 24, 2022.
In allowing the plaintiff to retain the entire equity in the 11 Connshire Drive property, which each value at about the same, $260,000.00, the court believes that the plaintiffs request for substantial periodic alimony over a long term is unreasonable under all the circumstances, mindful of the health of each and their educational status.
The plaintiff may retain the $8,000.00 balance in her Citizen's Bank account not reflected in her financial affidavit but testified to at trial. The plaintiff may retain her pottery business and any and all assets incident thereto free of any claim by the defendant.
As noted in the body of the memorandum, the plaintiff retained her maiden name when entering into this union and therefore there is no need for the court to consider that issue.
The court will grant the relief prayed for and dissolve the marriage on the grounds of irretrievable breakdown and declare the parties to be single and unmarried. CT Page 5991
Austin, J.